Councilor Spall, welcome back. Thank you, Your Honor. And again, you reserve four minutes of your time for rebuttal. Correct, Your Honor. Here, the 613 patent, and we only have one claim at issue, claim 28, but the entire 613 patent is directed to a ZTR vehicle control system, zero turn vehicle control system, that transmits drive signals parallel to the ground or the plane on which the vehicle is used. And the disputed claim language states, each integration link being movable in response to a speed input and configured to lie in a plane, and there's a colon after configured to, lie in a plane parallel to any flat surface on which a vehicle that is a product of any received steering input and any received speed input. And that, those two elements, the lie in the plane and transmitted drive signal, are offset and indented differently than the rest of the claim after that. Why doesn't figure 14 support the board's conclusion? I'm sorry, Your Honor. Why doesn't figure 14 support the board's conclusion? Why doesn't it? Yes. Figure 14 was never discussed in the spec at all, at least the part of figure 14, the slot, it was never mentioned. And if you look at their expert, again, Mr. Smith, his expert declaration on this purported movement, and you, it's at appendix 189, he has a drawing of this purported movement. And if you look at it, it's minuscule. It is like, I don't even know if it's in the tolerance of the devices. And what's minuscule? If you look at appendix 189, I'm looking at it, there's a little angle, I believe, if I've got the right page, correct. That little angle that goes off to the left on that drawing is the movement that their expert contended happens, it's vertically. I mean, it's minuscule. And this, the spec never even talks about that. Our expert put in other evidence that that movement need not occur either. I mean, the specification is silent as to that entire slot. And that could have been taken up with some slop in the device where it wouldn't move at all, or there'd be play in the arms. But their expert- I'm sorry, that angle isn't essentially a geometric necessity because of the slightly curved shape of the slot where the screw is? It's not a necessity. Our expert- If you start and take as a given that you have this slot here that's slightly arc-shaped, then isn't the movement in some angle a necessity following from that? Not that you couldn't have a different slot, but that on this slot, isn't there going to be angular movement to whatever degree? If there was no play built into the device, or if there was no other accommodation for a movement, like you had some sliding arms that were like a telescope that took up that movement, you know, instead of it happening there, yes, I think it was all rigid, it would move. But our expert opined that it's just as likely that it, especially with it silent in the spec, and the overwhelming evidence to the contrary, like there's 12 different statements how the drive signal is provided in the plane that their expert was really speculating that there'd be movement there. I mean, just as easy as there's movement, there might not be any movement. You know, there as well. So, the whole thing boils down to here is the prior art that, you know, this whole patent talks about moving that drive signal in a plane, okay? And there's no discussion of movement at all. Their expert extrapolated on this movement, and the prior art reference, the only time it delivers a drive signal, if you do it perpendicular, directly opposite of almost all the entire language of the specification. So, the invalidity holding and finding the claim that broad, it's our position that in Ray Smith, during IPRs under the BRI standard, cases came out later, and the in Ray Smith case is one of them, that said that you can't get too broad. You have to look at what is the invention pervasively described in the patent, and not just try to make the patent as broad as possible untethered to that. And here, I think it is untethered. I mean, we have an expert, which is extrinsic evidence, looking at this slot and speculating that there's some movement, minuscule movement, whereas that minuscule movement, there's just as much evidence that there is no movement, and it's not even discussed in the patent, that the claim should be construed the way that we propose, and not invalidated by a piece of prior art that is exactly the opposite. And that's our entire argument. I'll sit down now. I mean, it's a pretty simple case. I don't want to waste the course time. I mean... But can I ask you this, and I'm not going to formulate this terribly precisely. So, sometimes when we look at a specification, and we want to know how firmly does that specification's description bind the meaning of the claim, we will ask some question of the following sort. Is this particular restriction that we're talking about central to what the spec overall communicates the inventors invented? Is it essential to, central to, words like that, which are admittedly delicate words in the patent business? Is this one of those that is, is there something about the invention, here's what we discovered how to do, that requires something like absolute only in the horizontal plane, or is a little bit of wiggling in the vertical plane okay? Yeah, this patent and the invention, I would say the guts of it were that it moves only in that plane and delivers that drive signal while it's in that plane because the whole guts of it and purpose of it is to save space in a riding lawnmower. So, when you ride in the riding lawnmower, that can be underneath the rider, be in a plane and move instead of moving up and down, taking up space in the lawnmower. And that is definitely discussed in the specification and that's why this claim was drafted that way. But does the specification going to maybe a slightly vertical, why it would be that the horizontal would be better than a, you know, like a slightly vertical movement? How do you know, I mean, I understand your point about saving space, but there's no exact prohibition saying, you know, any bit of elevation is going to reduce that goal of saving space. No, I agree there is no exact prohibition that it can't move up a little bit or minuscule amount in the specification, that's true. But I think the more recent cases like the In re Smith case focused more on the central heart of the invention and the guts of the invention and trying to tether those claims to it as opposed to having a forbidding something in order to limit a claim, some statement in there that there's no way this thing moves up at all. Some absolute prescription. I think the recent case law that In re Smith case, which I can give you a site here. It's at, well, I have a Lexus site, Lexus 18526 at 1213. It states an interpretation that corresponds with what and how the inventor describes his invention and the specification is more important than a prescription or a prohibition that limits the claim to interpret it. So we rely on that case, Your Honors. Really don't have much more to say on this case. I think it's fairly straightforward. Thank you. Counselor Warwick. Good morning, Your Honors. May it please the court. Judge Toronto, I'd like to begin with this question about whether the horizontal movement was central to the invention or key to the invention. We would agree there are a lot of descriptions of horizontal movement. What's lacking is any sort of explanation for why it must be solely horizontal. And in fact, there is this express disclosure of vertical movement. And even though counsel seems to, I'm sorry, and that's figure 14 by the express disclosure. Is that what you mean? Correct. And is figure 14 or that aspect of it, I should say, discussed in words in the specification or not? No, not specifically. But it is undisputed or at least was undisputed before the board that that necessarily results in vertical movement. And counsel seems to equivocate a little bit today, but certainly even in the briefs to this court, it's undisputed that there is vertical movement. So because of that, this isn't like the Smith case. In Smith, this court reminded the board that you don't just take the broadest possible interpretation and then look for an express disclaimer or anything that would narrow it in the spec and then just leave yourself with that broadest possible language. It was a reminder that we have to interpret the claim language in view of the disclosures. And we submit that it's actually MTD who runs afoul of that directive because we have this explicit teaching of vertical movement. And in terms of the space-saving benefit that was referenced and going back to Your Honor, Judge Stoll's question, space-saving is referenced in the specification as a possible benefit. It's not necessarily claimed in all of the claims. And there's also no reason that a certain amount of vertical movement would avoid that stated goal of space-saving. Turning to Seaburg, which is the prior art, I think it's important to note there's no dispute that Seaburg has horizontal movement. It's just this question of whether there can also be vertical movement. And there's also a question in Seaburg about whether it's truly horizontal when it's in the idle condition. So first of all, the idle condition, the board properly found, is the tractor or the lawnmower being in use? You could use a scoop, for example. The motors are running. And furthermore, it's not even clear that there's actually an in-use requirement in the claim. But in terms of whether the part is ever horizontal, it's not just that the links are horizontal in Figure 1 of Seaburg. It's also that the spec specifically says when the tractor is in operation, these links, the follower links, are in a horizontal position, which tells you that they're horizontal relative to the tractor that is presumably sitting on the ground. And I really don't know what other reasonable reading there could be of that horizontal term other than horizontal to the ground. Okay. What you were saying was horizontal to the tractor, but you're saying horizontal to the ground. Well, what I'm saying, to be clear, is it would be horizontally, if something is horizontal in the tractor, presumably that's referencing the relationship of the tractor to the ground. And that is actually consistent with MTD's own use of the term. If we look at MTD's 613 patent, that's at issue. Column 7, they actually use the word horizontal to describe parallel with the ground. And even more telling is that when MTD filed its preliminary patent owner response, they actually said, quote, well, that the Seaburg links were, quote, in a plane parallel to the ground. That's Appendix 728. And of course, they changed their position later on. But it just seems that there really can be no reasonable dispute that horizontal in that context means parallel to the ground. Unless your honors have any further questions? No, we thank you very much for your argument. We have a little bit over five minutes if you need the time. But just a couple of points, your honors. Council stated that Seaburg had horizontal movement. It doesn't. When it's horizontal, it doesn't deliver any drive signal. It's in the idle position. A couple of words about Seaburg. I mean, the claim does require that the drive rods, the integration links be parallel to the plane upon which the vehicle is used. There's no description of a vehicle or a plane upon which it is used in Seaburg. And therefore, we submit that it's not a 102 reference. I mean, they do use the word horizontal. Our preliminary brief before we had an expert involved back then was before the point where you could really use an expert. We did use the word parallel to the ground at one point in the brief. But we used horizontal every other time when we were talking about it. It was a mistake. But we submitted substantial expert declarations and testimony that this contraption in Seaburg really could be mounted any number of ways in a vehicle. Because it's not shown, the vehicle or the ground is not shown, or the ground plane is shown in Seaburg. And the word horizontal really was just used to refer how it is relative to all the other parts that are shown in the drawings. So we submit that even if they get, or they already have their claim construction, even if the claim construction is not reversed, Seaburg is not an anticipating reference. Thank you. We thank you. We thank the parties for their arguments. Next case is 17-2430.